# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## Appeal No. 25-1014

## BRENDA J. INFANTINO,

## Plaintiff-Appellant,

## v.

## HONORABLE PETE HEGSETH,
### Secretary of Defense,

## Defendant-Appellee.

## DEFENDANT-APPELLEE'S RULE 27(c)
## MOTION FOR SUMMARY DISPOSITION

Defendant-Appellee—Pete Hegseth, Secretary of Defense ("the Secretary")—respectfully moves under Rule 27(c) of the Local Rules of the Court of Appeals for the First Circuit for this Court to summarily dismiss this appeal.

Plaintiff-Appellant—pro se Brenda J. Infantino ("Infantino")—worked as an auditor for the Defense Contract Audit Agency ("DCAA") from August 2017 until November 2018, when the DCAA terminated her employment for performance-based reasons. In December 2021, Infantino filed this lawsuit, which asserts claims for discrimination and harassment on account of age, gender, and disability.

In September 2023, the Secretary moved for summary judgment. In November 2024, the district court issued a 28-page memorandum and order granting the Secretary's motion.

First, the district court determined that Infantino failed to make a prima facie case of failure to promote because she did not identify a similarly qualified person who received a promotion and therefore dismissed that claim. Second, with respect to her termination claims, although the district court held that she did make a prima facie case, the court concluded that Plaintiff did not show through evidence that the DCAA's proffered reasons for her termination contradicted the agency's internal policies or procedures or were otherwise pretextual. Third, regarding the hostile work environment claim, the district court determined that the summary judgment record did not contain sufficient evidence upon which a reasonable jury could conclude that the events identified by Infantino amounted to a severe or pervasive environment.

Infantino now seeks to appeal the district court's ruling. In so doing, however, she does not meaningfully address the district court's reasoning or analysis—let alone provide any basis to conclude that the district court erred in granting the Secretary's motion for summary judgment.

Infantino does not, for example, identify a similarly situated person who received a promotion. Nor does she point to anything in the district court record to show that the DCAA violated any of its policies or procedures. And while Infantino states that the district court ignored favorable evidence and improperly denied her motions to compel, she does not cite nor identify any evidence or law to support her statements.

Infantino's appeal thus does not present a substantial question. Accordingly, this Court should summarily affirm the district court's judgment and dismiss the appeal.

## BACKGROUND

### A. Factual Background

In August 2017, Infantino started working for the DCAA as an auditor. D.63-51 at 1.[1] The DCAA is a federal agency that provides financial and audit services for entities that acquire and administer contracts. *See* www.dcaa.mil (accessed July 31, 2025).

On May 17, 2018, Infantino's supervisor documented concerns about Infantino's ability to implement supervisory guidance in an

---

[1] The citation "[D._]" refers to a district court docket entry. The citation "[Br._]" refers to Plaintiff's appellate brief.

appraisal. D. 63-6 at 2,8. On May 30, 2018, the supervisor presented the appraisal to Infantino, who signed it. D. 63-7 at 2.

Starting in June 2018, the supervisor and another employee, who served as a coach or mentor for Infantino, began having weekly meetings with Infantino during which the supervisor and the coach discussed Infantino's assignments and reviewed the areas that needed improvement. D. 63-4 at 3. The coach observed that, during those meetings, Infantino displayed a hostile attitude towards the supervisor, to include cutting her off and rolling her eyes at her. D. 63-4 at 3. The supervisor also provided written guidance to Infantino before and after meetings. D. 63-9 at 1; D. 63-10 at 1; D. 63-11 at 1.

In July 2018, the supervisor presented Infantino with her 10-Month Probationary Period/Trial Evaluation, in which she rated Infantino as "Unsatisfactory" in the categories of "Ability to Follow Instructions" and "Personal Characteristics," which included professional behavior, tact, cooperativeness, and attitude, and "Needs Improvement" in the categories of "Use of Time" and "Judgment." D. 63-13 at 1.

In August 2018, the supervisor completed an interim evaluation in which she specified the deficiencies she perceived in Infantino's

performance and her expectations going forward. D. 63-17 at 3-13. The supervisor also documented that Infantino had a defensive, argumentative, and uncooperative attitude. D. 63-17 at 7.

That same month, Infantino's second-line supervisor informed Infantino that she would not be eligible for a pay increase or promotion until her performance improved. D. 63-18 at 8. The second-line supervisor based this action on the unsatisfactory ratings received by Infantino in the July and August evaluations. D. 63-6 at 11.

By email dated August 28, 2018, Infantino asked her supervisor to change desks and stated that she would seek a reasonable accommodation if one was necessary. D. 63-27. Her supervisor responded that Infantino could pick a new desk. D. 63-27. Another DCAA employee, who had been copied on the email, started working on the reasonable accommodation request. D. 68-28 at 2-3; D. 63-29 at 4.

On September 10, 2018, the supervisor asked Infantino if she wanted to continue the meetings. Doc. 63-2 at 2. Infantino responded that the meetings hindered her development and asked for a new coach, to transfer to a different team or location that might be better suited to her

"newly-acquired hearing aids," and for clarification as to what her supervisor expected from her. D. 63-32 at 3.

On September 17, 2018, Infantino submitted a doctor's note stating that she had tinnitus and hearing loss and had recently obtained hearing aids. D. 63-33 at 1-2. The doctor recommended that the DCAA provide Infantino with a caption phone. D. 63-33 at 1-2.

By memorandum dated September 28, 2018, Infantino's second-line supervisor informed Plaintiff of a proposal to terminate Infantino for failure to meet deadlines, retain information, apply instructions, prepare properly indexed, referenced, and documented working papers, and display a cooperative attitude. D. 63-34 at 1-7. Infantino responded to the notice and submitted 400 pages of documentation. D. 63-3 at 1-8.

By memorandum dated November 26, 2018, the DCAA, through Infantino's third-line supervisor, notified Infantino that her employment would be terminated. D. 63-36 at 1-5. In so doing, the third-line supervisor explained that Infantino did not refute the assertions that she did not meet timeframes or retain information and did not address other assertions. D. 63-36 at 1-5.

## B. Procedural History

In December 2021, Infantino filed a complaint in federal court initiating the proceedings below. D.1. She completed service on June 15, 2022, and the Secretary filed a timely answer on August 11, 2022. D. 15; D. 16. On September 11, 2023, Infantino filed an assented to motion to extend the fact discovery deadline to November 21, 2023. D. 60.

On September 28, 2023, Defendant moved for summary judgment, arguing: 1) that Infantino could not make a prima facie case of discrimination because she could not show that she performed her job at an acceptable level; 2) that she could not show that DCAA's proffered reasons for her termination (poor performance and uncooperative attitude) were pretext for discrimination; and 3) that the challenged actions were neither severe nor pervasive. D.65 at 5-19.

On November 17, 2023, Infantino filed a motion to compel discovery in which she asked the Court to compel the Secretary to produce examples of her workpapers or allow her to access a DCAA database and order the Secretary to finance depositions. D. 74. In response, the Secretary explained that the DCAA did not retain some of the requested documents after it changed software in late 2018 and that other

requested documents did not exist. D. 74 at 1-2. The Secretary attached an affidavit of Infantino's supervisor to support his response. D. 75-1. The Secretary also reiterated an offer to allow Infantino to serve written deposition questions to the DCAA witnesses. D. 74 at 3.

On November 29, 2023, the district court denied Infantino's motion to compel, reasoning:

> The Court finds that [Infantino's] requests that [the Secretary] produce additional documents and ESI, grant her access to a specific database, and fund her depositions, are not proportional to her discovery needs and would be unduly burdensome, particularly given [the Secretary's] (1) stated willingness to allow [Infantino] to serve written deposition questions that the defense witnesses could answer under oath, (2) [the Secretary's] stated willingness to work with [Infantino] to produce additional relevant documents and ESI, and (3) [the Secretary's] representation that he has produced responsive documents for which production is not overly burdensome.

D. 77 (citation omitted).

## C. The District's Memorandum and Order

On November 7, 2024, after reviewing the parties' submissions, the district court issued a memorandum and order granting the Secretary's motion for summary judgment D. 96.

First, the district court rejected the Secretary's argument that Infantino could not make a prima facie case regarding her termination

because she could not show that she was a qualified employee at the time of the challenged action. D. 96 at 2.

Next, the district court analyzed matters that neither side raised, such as whether the failure to promote constituted an adverse action, whether Infantino offered evidence showing a connection between her gender and the termination, whether there was evidence of a lack-of-neutrality regarding age, whether Infantino had a disability or whether and the DCAA offered a reasonable accommodation. D. 96 at 17-21. The district court concluded that Infantino made her prima facie case regarding every claim except the failure to promote claim. D. 96 at 17-21. Regarding that claim, the district court concluded that Infantino could not prevail on that claim because she did not identify a comparator who got promoted. D. 96 at 17-18.

The district court then determined that the Secretary met his burden to articulate a legitimate, nondiscriminatory reason for the challenged actions—namely, Infantino's unsatisfactory job performance and her struggles with implementing instruction. D. 96 at 21-22.

Next, the district court addressed what is generally the main issue in employment cases, which is whether the employer's articulated

reasons for the challenged actions amounted to pretext, and held that they did not. D. 96 at 22-24. In conducting this analysis, the district court first determined that Infantino's Complaint "seem[ed] to suggest that several purported procedural and policy irregularities indicate that her termination was pretextual." D. 96 at 22. The district court ultimately found that, "[i]n view of the evidence presented by the parties, the Court cannot determine the extent to which the DCAA's actions were contrary to the agency's internal procedures or policies." D. 96 at 23. Nevertheless, the district court held that "[e]ven so, Plaintiff has presented no evidence from which a reasonable jury could determine that any administrative shortcomings served as pretext for terminating Plaintiff on the basis of her age, gender, or disability.[2] *Id.* (internal citations omitted). And, in arriving at that conclusion, the district court further explained that a statement by a single witness who believed that DCAA engaged in a pattern of age discrimination did not suffice to create a genuine dispute regarding pretext. D. 96 at 24.

---

[2] The district court noted that the supervisor first documented performance concerns in April 2018, which was a month before May 2018, when Infantino first started asking the DCAA about reasonable accommodations. D. 96 at 24.

Finally, the district court concluded that Infantino had not offered evidence that could lead a jury to conclude that the events that comprised Infantino's hostile work environment harassment claim met the "severe or pervasive" standard required by the caselaw. D. 96 at 26-27.

On November 8, 2024, the district court issued a final judgment on behalf of the Secretary. D. 97. On January 2, 2025, Infantino filed a timely Notice of Appeal in this Court. D. 102.

### D. Infantino's Brief To This Court

Infantino raises three arguments that pertain to the merits of the district court's ruling on summary judgment.

First*,* Infantino contends that the district court erred in concluding that she did not identify a similarly situated individual who received a promotion. Br. at 6, 8, 20. According to Infantino, a person named John Cantone "was a similarly qualified younger male auditor" who "received a promotion." Br. at 20.

Second, Infantino argues that the district court erred by determining that there was no genuine dispute of material fact and ignored critical evidence. Specifically, Infantino faults the district court for (i) accepting the Secretary's articulated nondiscriminatory reason for

the challenged action—poor performance—and (ii) shifting the burden to establish pretext to her, and she contends that the district court "did not take into account" or "acknowledge" various assertions Infantino made. Br. at 17, 25, 48-59.

*Third*, Infantino claims that the district court's denial of her motion to compel prevented her from obtaining the evidence she needed to prove her case. Br. at 48-49.

## ARGUMENT

## I. INFANTINO WAIVED THE ARGUMENT THAT JOHN CANTONE WAS A COMPARATOR.

Infantino did not identify John Cantone as a potential comparator in her complaint, *see* D. 1, or in any brief regarding the failure to promote before the district court ruled. And when the district court ruled that she could not press a failure to promote claim for that reason, she did not file a motion to alter or amend the judgment under Rule 59 or a motion for relief from the judgment under Rule 60 after the district court issued its ruling. Having failed to do so, Infantino cannot raise such arguments now for the first time on appeal. *See Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 146–47 (1st Cir. 2004) ("a party who fails to object to a motion to dismiss must raise any claims of error by filing the appropriate

post-judgment motion or forfeit his or her right to raise those claims before this court").

Moreover, although this Court may excuse a plaintiff's failure to raise arguments below based on "extraordinary circumstances," Infantino does not identify *any* circumstances—much less extraordinary ones—that would explain or justify her failure to oppose dismissal before the district court. *See id.* at 146 ("absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal")(quoting *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 21 (1st Cir. 1992)). Accordingly, this Court should deem her arguments waived and dismiss the appeal. *See id.*

Finally—even setting aside her failure to raise this issue below— Infantino has likewise failed to develop any substantial arguments on appeal. In her brief to this Court, she states that "Cantone . . . was a similarly qualified younger, male auditor newly hired after [Infantino] . . . received a promotion" but does not cite to any evidence in the summary judgment record to support her assertion. Br. at 20. This perfunctory treatment of the issue on appeal therefore provides an additional and

independent reason for deeming her arguments waived. *See, e.g.*, *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *United States v. Salley*, 651 F.3d 159, 161 n.2 (1st Cir. 2011) (deeming "pro se arguments" "waived for [appellant's] failure to raise them below and for their perfunctory treatment on appeal").

## II.  INFANTINO FAILS TO PRESENT ANY SUBSTANTIAL ARGUMENT ON APPEAL.

This Court should summarily dismiss the appeal for failing to present any substantial argument that the district court erred in granting summary judgment to the Secretary. *See* First Circuit Local Rule 27.0(c) ("the court may dismiss the appeal or other request for relief or affirm and enforce the judgment or order below . . . if it shall clearly appear that no substantial question is presented").

### A. The District Court Properly Concluded That Infantino Failed to Identify Sufficient Evidence of Pretext.

First, Infantino does not directly address the district court's conclusion that she failed to identify evidence to support her claim that

the DCAA violated its own procedures and policies regarding her performance evaluations and termination. D.96 at 13–20.

As the district court explained, to avoid summary judgment, Infantino had to show, by a preponderance of the evidence, that the DCAA's proffered reasons for her termination was pretextual and that the actual reason was discriminatory. *E.g., Serrano-Colon v. United States Dep't of Homeland Sec.,* 121 F.4th 259, 271 (1st Cir. 2024) ("It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; the plaintiff must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination.") (cleaned up). As the district court observed, "pretext means more than an unusual act; it means something more than a business error; pretext means deceit used to cover one's tracks." D. 96 at 22 (cleaned up). The district court then noted that Infantino "seem[ed] to suggest that several purported procedural and policy irregularities indicate[d] that her termination was pretextual" but "presented no evidence from which a reasonable jury could determine that any

administrative shortcomings served as pretext for terminating [Infantino] based on her age, gender, or disability." D. 96 at 22-23.

On appeal, Plaintiff does not fault this analysis. Instead, she merely reiterates her suggestions of procedural or policy error without citing to evidence to support the suggestions. *See* Br. at 48-49 (arguing that the Court "did not acknowledge that the [Secretary] did not follow the Performance Appraisal Policy" without citing to any evidence in the summary judgment record); *id.* at 50 (contending that the DCAA did not follow policy without identifying the particular policies); *id.* at 56 (alluding to "evidence showing that [the Secretary] did not follow DCAA Performance Appraisal procedures" without identifying those procedures or citing to any evidence in the record); *id.* at 58 (stating that she "provided evidence" that the DCAA "did not abide by DCAA New Hire Training" without identifying the evidence that supported that statement). Of most significance, Infantino does not cite to any *evidence* that supports her claim of pretext.

Infantino thus has not "produced sufficient evidence that [the] nondiscriminatory reason [articulated by the DCAA] was pretextual to avoid summary judgment." *Henderson v. Massachusetts Bay*

*Transportation Auth.*, 977 F.3d 20, 30 (1st Cir. 2020). Accordingly, this Court should summarily affirm the district court's decision to enter summary judgment on behalf of the Secretary regarding Infantino's age, gender, and disability discrimination claims.

### B. The District Court Properly Granted Summary Judgment to the Secretary Regarding Infantino's Hostile Work Environment Claim.

Second, Infantino does not dispute or even address the district court's conclusion that she did not offer sufficient evidence of a hostile work environment. D. 96 at 25-28.

As the district court explained, to establish a claim of hostile work environment, a plaintiff must show that the harassment was sufficiently severe or pervasive as to change the conditions of the plaintiff's employment and create an abusive environment. D. 96 at 26 (citing *Lima v. City of Providence*, 17 F.4th 202, 208 (1st Cir. 2021)). In addition, the challenged conduct must be both objectively and subjectively offensive, such that both a reasonable person would find it hostile or abusive and the plaintiff perceived it to be so. *E.g., Brader v. Biogen Inc.*, 983 F.3d 39, 59-65 (1st Cir. 2020) (affirming grant of summary judgment to employer where the plaintiff offered no evidence as to exactly how the supervisor's

behavior impacted his working conditions in a severe or pervasive manner). "[T]he alleged harassment also must stem from an impermissible motivation." *Id.* at 63 (cleaned up)

Here, however, before the district court Plaintiff did not point to or adduce any evidence that showed that the challenged actions, which include the performance appraisals, low ratings, allegedly inadequate supervisory guidance, perceived flippant or dismissive behavior, denial of requests for a transfer or a new coach, and correction of her documentation to reflect her probationary status—altered her working environment. Nor did she identify any evidence indicating that the challenged actions stemmed from discriminatory animus. Thus, the district court correctly entered summary judgment in favor of the Secretary with respect to the hostile work environment claim. *See* D. 96 at 28.

On appeal, Infantino again does not address the district court's reasoning or basis for dismissing this claim. This Court should therefore summarily affirm the district court's dismissal of her hostile work environment claim.

## C. The District Court Did Not Abuse Its Discretion in Denying Infantino's Motion to Compel.

In her brief to this Court, Infantino argues that the district court "[i]ncorrectly stat[ed] there was no dispute of material fact when the majority of claims made by the [Secretary] were in dispute and noted by [Infantino] as [the Secretary] did not produce discovery and the [district court] denied [her] motion to compel discovery." Br. at 17. To the extent that Infantino is challenging the denial of the motion to compel, that claim lacks merit, as Infantino has not articulated how the district court erred or abused its discretion.

A trial court has broad discretion in ruling on discovery matters, and appellate courts review a denial of a motion to compel for abuse of discretion. *Bonner v. Triple-S Mgmt. Corp.,* 68 F.4th 677, 684 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 1003, 218 L. Ed. 2d 21 (2024). "This standard of review is not appellant-friendly, and [the Court] will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." *Id.* (cleaned up).

In her motion to compel, Infantino asked the Court to order the Secretary to allow her access to the DCAA's computer and hard drives so

she could locate electronically stored information relating to audits on which she worked (such as previous workpapers) and to finance depositions for her. D. 74 at 2, 6. In response, the Secretary explained that the DCAA previously stopped using the database Infantino identified, that the DCAA did not retain non-final work product with which Infantino was involved, and that confidentiality concerns prevented the DCAA from permitting Infantino to search through the agency's computers at this juncture. D. 75 at 1-2. Regarding the request for depositions, the Secretary offered to allow Infantino to serve written deposition questions. D. 75 at 1.

After reviewing the party's submissions, the district court determined that Infantino's requests were not proportional to her discovery needs and would be unduly burdensome. D. 77. The district court provided reasons for the decision and noted that the Secretary had represented that the DCAA had searched for responsive documents and remained willing to work with Infantino. D. 77.

Infantino does not identify any error or abuse of discretion on the part of the district court; instead, she merely focuses on the perceived effect of the denial. Under such circumstances, courts have rejected

challenges to the denials of motions to compel discovery. *E.g.,*
*Greene v. Walgreen E. Co.*, No. 16-2487, 2018 WL 8263947, at *5 (1st Cir.
Nov. 15, 2018) (explaining that appellant who mainly argued that ruling
prevented him from presenting sufficient evidence "failed to present any
substantial issue with respect to the district court's discovery rulings.")

## CONCLUSION

For the reasons stated, and on the authorities cited, summary
disposition under Rule 27(c) is warranted.[3]

Respectfully submitted,

Leah B. Foley
United States Attorney

By:  */s/ Annapurna Balakrishna*
Annapurna Balakrishna
Assistant U.S. Attorney

---

[3] If Plaintiff's appeal is not summarily dismissed under Rule 27(c),
the Secretary requests in the alternative that he be permitted to file a
formal brief.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

### Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains **3,890** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (*i.e.*, the corporate disclosure statement, table of contents, table of citations, addendum, and certificates of counsel).

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Century Schoolbook 14 point, in Microsoft Word version 2018.

*/s/ Annapurna Balakrishna*
Annapurna Balakrishna
Assistant U.S. Attorney

Date: August 15, 2025

## CERTIFICATE OF SERVICE

I hereby certify that, on August 15, 2025, this document filed on the ECF system will be served on Appellant Brenda J. Infantino, who is a registered user of such system.

*/s/ Annapurna Balakrishna*
Annapurna Balakrishna
Assistant U.S. Attorney